In the Matter of BAJART MANAGEMENT, INC., Respondent, against ROBERT C. WEAVER, as State Rent Administrator, Appellant.

First Department, May 12, 1959.

*Jacob B. Ward* of counsel (*Nathan Heller,* attorney), for appellant.

*Irving Sonnenschein* of counsel (*Sonnenschein & Sherman,* attorneys), for respondent.

M. M. FRANK, J. This is an appeal by the Rent Administrator and the Temporary State Housing Rent Commission from an order entered at Special Term remanding the proceeding to the Administrator for further consideration.

The petitioner, owner of a 49-unit apartment house located at 100 Fort Washington Avenue, Borough of Manhattan, City of New York, applied for a rent increase predicated upon the claim that it was not receiving a 6% return upon the property (State Rent and Eviction Regulations, § 33, subd. 5).

The petitioner purchased the property in November, 1954, a few years before the rent increases were sought, for a sum slightly in excess of $331,000, of which $30,000 was paid in cash. The balance of the consideration consisted of a consolidated first mortgage of approximately $257,000 and a second mortgage of $44,000. The cash payment represented the differ-

ence between the purchase price and the existing liens, no purchase-money mortgage being required.

In processing the application, the Administrator declined to accept the purchase price of $331,000 as the base for calculating the allowable 6% return, but instead used the assessed valuation of $275,000. The application was denied for several reasons, some of which were obviously erroneous. For example, the Administrator stated that, "Since the purchase involves abnormal financing, as evidenced by the low amount of cash paid by the purchaser with abnormally large purchase money mortgages, the purchase price does not qualify as the eligibility base." There were no purchase-money mortgages, and the only way that a larger amount in cash could have been paid would have been in reduction of the mortgages, or by a higher price, neither of which was required or would be practical.

With commendable candor, the Administrator admits that the assessed value rather than the purchase price was adopted as the base because the cash payment was less than 10% of the purchase price. It seems that the Commission has adopted an internal policy of rejecting the purchase price as the appropriate valuation of property if less than 15% is paid in cash in any transaction.

We cannot approve the processing of an application for rent adjustments, or the granting or denial thereof, upon some internal rule of thumb practice. Such mechanical exercise of administrative judgment and discretion denotes an arbitrary, unreasonable and capricious determination. Here, the application of the policy achieves a manifestly incongruous result, for under it, an additional cash payment of approximately $19,000, if that were possible, would, a fortiori, compel the Administrator to increase his valuation of the premises by $56,000.

The applicable statute, in part, provides that the commission shall make adjustments of maximum rents where "(1) the rental income from a property yields a net annual return of less than six per centum of the valuation of the property. Such valuation shall be the current assessed valuation * * * except where there has been a bona fide sale of the property within the period between March fifteenth, nineteen hundred fifty-three, and the time of filing of the application as the result of a transaction at arms' length, on normal financing terms at a readily ascertainable price and unaffected by special circumstances such as a forced sale, exchange of property, package deal, wash sale or sale to cooperative;" (State Residential Rent Law, § 4, subd. 4, par. [a], cl. [1]; L. 1946, ch. 274, as amd. by L. 1957, ch. 755). Subdivision 5 of section 33 of the State Rent

Regulations was amended to follow the statutory provision substantially.

Therefore, by specific legislation and its own regulations, the commission has been mandated to adopt the sales price as the appropriate valuation base upon which to process an application for rent adjustments, with enumerated exceptions.

Prior to the 1957 amendment, it was settled law that to use the sales price rather than the assessed valuation as a base for processing a rent increase petition was a proper exercise of discretion for the commission (*Matter of Kaufmann* v. *Abrams*, 286 App. Div. 998, motion for leave to appeal denied 309 N. Y. 1034; *Matter of Wile* v. *McGoldrick*, 284 App. Div. 388). On at least two occasions when the commission sought to limit or vary the statute by adopting an amendment to its regulations, the courts have prohibited the attempt to usurp the legislative prerogative (*Matter of Florell Equities* v. *Weaver*, 2 A D 2d 542, affd. 2 N Y 2d 982; *Matter of 340 East 57th St. Corp.* v. *Weaver*, 3 Misc 2d 356, affd. 2 A D 2d 678, affd. 2 N Y 2d 799; *Matter of Stoll* v. *Weaver*, 16 Misc 2d 271).

It should be noted that there is no statutory provision specifying the amount or percentage of cash consideration required, as a condition precedent to the allowance of rent increases. Nor is there a regulation containing such a prerequisite. In the absence of statutory direction, the adoption of a percentile line of demarcation may well be the impermissible assumption of power, in excess of that granted by the Legislature.

Special Term held that (16 Misc 2d 349, 350) '' There is no question that the mortgages involved in the sale were bona fide mortgages existing at the time of the purchase. There is likewise no showing that there was any collusion between the purchaser and the previous owners of the mortgages.'' The record justifies the conclusions reached at Special Term. The sale of the subject property was at a readily ascertainable price and does not appear to have been a '' package deal '', a '' wash sale '', an '' exchange of property '' or a '' sale to cooperative ''. It remains, therefore, for the commission to determine whether it was a '' transaction at arms' length, on normal financing terms ''.

While the remission directed by Special Term is correct, we do not approve the proposition that the Administrator is bound in every case by the sales price, any more than we can approve the criterion of a percentage of cash investment as the invariable factor in a rent adjustment proceeding.

It is clear that an application for rent increases under the 6% formula should be granted, pursuant to statutory mandate,

upon the use of the sales price as the base for computations, where there is a bona fide sale, absent the exceptions and special circumstances indicated by the statute. However, there may be many factors in real estate transactions which would justify the Administrator in discarding the bare sales price as the base for his computations. For example, there may be a sale for the sole purpose of an application for rent adjustments, or other situations peculiar to a particular transaction that may result in a transfer of the property at a price in excess of the fair valuation.

It follows that the Administrator is not foreclosed from exercising his discretion within the permissible limits prescribed by the statute.

The order should be affirmed, without costs, and the proceeding remanded for determination in accordance with the views herein expressed.

BREITEL, J. P., RABIN, VALENTE and STEVENS, JJ., concur.

Order unanimously affirmed, without costs, and the proceeding remanded for determination in accordance with the opinion filed herein.