## First Department, June, 1959

### (June 2, 1959)

■ In the Matter of Realty Agency, Inc., Appellant, against Robert C. Weaver, as State Rent Administrator, Respondent.

Appeal from an order of the Supreme Court at Special Term, entered March 6, 1959, in New York County, which granted a motion by respondent

for an order dismissing the landlord's petition and confirming the State Rent Commission's use of assessed valuation as the base for calculating the allowable statutory net annual 6% return.

Order affirmed.

M. M. FRANK, J. (dissenting). The Administrator rejected the sales price of the property involved and adopted the assessed valuation as the base for his computations in an application for a rent increase under the 6% statutory formula. Although the petitioner acquired the property in question, including a small adjoining structure as a "light protector", for the sum of $1,222,000, the Administrator adopted the assessed valuation of $840,000 rather than the sales price as his base for computation. The rejection of the sales price was predicated upon two grounds: first, that the sale was a "package deal"; second, that it was not an "arm's length transaction". The first ground has been abandoned, thus leaving the second as the only one at issue.

The applicable statute (State Residential Rent Law, § 4, subd. [a]; L. 1946, ch. 274, as amd. by L. 1957, ch. 755) requires the use of the sales price as the base for rent adjustments, if it is the result of an arm's length transaction, on normal financing terms at a readily ascertainable price and unaffected by special circumstances, such as a package deal, wash sale or sale to a co-operative.

The Administrator rejected the sales price as not being an arm's length transaction, apparently for the following reasons. It appears that two stockholders of the purchasing corporation, who owned bonds secured by a mortgage on the premises prior to 1936, sold them on or about February 6, 1936 at approximately 50 cents for each dollar face value. The transfer was effected pursuant to an agreement that upon a sale, exchange or final disposition of the *bonds,* the sellers were to receive 35% of any net profit therefrom, as well as 35% of the net profits from the operation of the premises. The bonds were redeemed at face value, and in addition the two stockholders received substantial sums from the net operating profits in accordance with their agreement.

On the record, it cannot be reasonably concluded that the agreement was the motivating cause for the purchase of this property, or that the price paid was inflated because of that situation. Contrariwise, it is asserted by the petitioner, as bearing on the use of the sales price as a proper valuation, that a broker was paid a substantial sum of money for producing a buyer ready, able and willing to purchase the premises at a slightly higher price than was actually paid. The petitioner also contends that a new mortgage taken by a responsible insurance company in the sum of $815,000 indicates that the assessed valuation of $840,000 does not reflect the fair value of the premises.

Before the 1957 amendment, when the assessed valuation was the accepted base, we held that "While we recognize that assessed valuation is not the sole criterion in determining the value of the property, it is entitled to great weight". (*Matter of Wile* v. *McGoldrick,* 284 App. Div. 388, 391.) Under the amended statute, by a parity of reasoning and because it is the sole base absent the designated exceptions, the same test should apply to the sales price.

"Arm's length transaction" has been defined by Black (Law Dictionary) thus: "*At Arm's Length.* Beyond the reach of personal influence or control. Parties are said to deal 'at arm's length' when each stands upon the strict letter of his rights, and conducts the business in a formal manner, without trusting to the other's fairness or integrity, and without being subject to the other's control or overmastering influence."

The barter and sale of real property, especially in large cities, are not the simple transactions that they were a generation ago. Today they frequently

involve huge sums of money and intricate financing. For example, it is generally recognized that the growth of "syndication" has been due, primarily, to the fact that few individuals command funds sufficient to purchase modern commercial or residential buildings. Therefore, if too narrow a construction is placed upon the definition of "arm's length", as used in the statute, it may well result in establishing standards not contemplated by the Legislature.

The purchase of the property involved herein bears the indicia of an arm's length transaction. Hence, that phase of the application was entitled to be carefully explored by the Administrator, and he should not have rejected the sales price, without a hearing, simply because a cursory examination disclosed facts not common to the ordinary sale of real property.

I am constrained to dissent, therefore, and vote to annul the Administrator's determination and remit the proceeding for a hearing.

Breitel, J. P., Valente, McNally and Stevens, JJ., concur in decision; M. M. Frank, J., dissents in opinion.

Order affirmed, with $20 costs and disbursements to the respondents.